[Crim. No. 309. Third Appellate District.—July 23, 1915.]

THE PEOPLE, Respondent, v. J. J. MURPHY, Appellant.

CRIMINAL LAW—MURDER—VERDICT OF MANSLAUGHTER—SUFFICIENCY OF EVIDENCE.—In this prosecution for the crime of murder, it is held that the verdict convicting the defendant of manslaughter was supported by the evidence.

APPEAL from a judgment of the Superior Court of San Joaquin County and from an order denying a new trial. J. A. Plummer, Judge.

The facts are stated in the opinion of the court.

John R. Cronin, and O. B. Parkinson, for Appellant.

U. S. Webb, Atttorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

CHIPMAN, P. J.—Defendant was accused of the crime of murder, the alleged victim being one Amos Hardy. The jury brought in a verdict of guilty of manslaughter and the court sentenced him to imprisonment at Folsom for the period of six years. Defendant appeals from the judgment and from the order denying his motion for a new trial.

The only point urged on appeal is that the evidence was insufficient to justify the verdict.

There was evidence tending to show the following facts: One McAndrews was at the time of the homicide the proprietor of a saloon in the city of Stockton; defendant and two other men—a man by the name of Curley and another by the name of Kane—came into McAndrews's saloon about 9 o'clock at night, both defendant and Curley somewhat intoxicated; at this time McAndrews, deceased, Hardy, and two other men were engaged in a game of cards in the room not far from the bar; defendant and his party had a drink at the bar after which defendant went to the table where the card game was going on and offered to shake hands with McAndrews between whom and himself there had been some previous disagreement; McAndrews repulsed defendant's offer and directed his bartender, Mello, not to serve any more drinks to defendant. Then ensued a general brawl or personal encounter between defendant and his party and McAndrews and his bartender, the details of which need not be stated here. It resulted in defendant's being ejected from the room; he immediately ran in again and commenced throwing dishes promiscuously that were on the counter and was again put out. Deceased, Hardy, had been a mere spectator of these disturbances and took no part in them; so far as appears he was a stranger to defendant and no motive

appeared for defendant's subsequent assault upon deceased who left the saloon shortly after defendant was thrown out the second time. He had gone but a short distance when he was assaulted by two men who, the evidence tended to show, were Curley and defendant. In his struggle with these two men he was beaten about the face and received a wound in the back by some sharp instrument which penetrated his lungs; he returned to the saloon, the evidence of his injuries in his face apparent, and it was soon discovered that he had received a knife wound; the police were called and he was taken to the hospital where he died in about two weeks of pneumonia superinduced by this wound; defendant, after this affray outside, again came to the saloon door, but was confronted by a gun in Mello's hands and left; he and Curley then went to a poolroom across the street and was, a few minutes later, there arrested with Curley by a police officer and taken to the police station. This officer testified that Curley was three or four feet in front of him as they started for the station and defendant close by the officer's side; the latter heard something drop on the pavement, as they stepped to the gutter, and picked it up, which proved to be a pocket knife. He said to defendant, "Here is your knife, Murphy,". but Murphy said it was not his; he then called to Curley, saying, "Here is your knife, Curley," but he denied its ownership. The officer put the knife in his pocket. At this time the officer had not learned that any one had been cut, but on arriving at the station he learned of the affray. He then took the knife from his pocket and, opening the large blade, found what he testified was fresh blood upon it. Curley testified that he did not drop the knife and the evidence showed that there was no reasonable hypothesis other than that defendant dropped it.

There was some attempt in the cross-examination of witnesses to show that McAndrews was mixed up in this outdoor affray, but he testified that he did not leave the saloon until after the officers had arrived and there was no evidence connecting him with it. Defendant offered no evidence other than his own testimony in which he denied owning the knife kept by the officer and introduced as an exhibit and denied making an assault upon the deceased. The cross-examination of the people's witnesses who were outside the saloon when the fight occurred was conducted upon the theory that

some one of the persons there assembled—and it seems there was quite a number—may have run up to the men engaged in the fight and inflicted the wound. The cross-examination was also designed to cast doubt upon the identity of the persons thus engaged. But the testimony showed that the struggle was some little distance from the bystanders and was concluded without interference by any of them.

We have examined the testimony carefully and it seems to us that the jury were fully warranted in finding that the deceased was one of three men engaged in the affray and that Curley and defendant were the other two men; that deceased was attacked by these other two men and in the course of the ensuing fight he received the wound that proved his undoing and that this wound bore evidence of having been made by a knife blade such as was in the knife dropped at the officer's feet by the defendant.

It is possible, we might say probable, that both these men, Curley and Murphy, particularly Murphy, being in a somewhat intoxicated condition, for the moment thought deceased was McAndrews and made the attack for that reason. We can suggest no other reason for the assault upon a stranger who had done neither of them harm. But whatever the reason, we think the facts established and the circumstances elicited might well have left upon the minds of the jurors the impression with reasonable certainty that one of these two men, Curley or Murphy, stabbed the deceased, and the fact well established that Murphy dropped the knife that made the fatal wound left no doubt that he was the guilty person.

The contention of defendant's counsel at the argument was mainly that defendant was found guilty because of what occurred in the saloon and that, admitting as he does in his brief, that the evidence was admissible as part of the *res gestae*, still it was the controlling influence upon the minds of the jury and hence the conviction was without support. If, as we think was the case, there was evidence tending to show with reasonable certainty that the attack, as we have shown, was made upon deceased outside of the saloon, the jury were justified in reaching their verdict, no matter how indignant they may have felt toward defendant for his conduct within the saloon. The defendant was convicted upon the evidence of his acts at the time and place of the

attack upon the deceased and not for anything he did in the saloon. Deceased came to his death through the agency of defendant for which we can discover neither palliation nor excuse.

The judgment and order are affirmed.

Ellison, J., *pro tem.*, and Hart, J., concurred.